## CRILE v. COMMISSIONER OF INTERNAL REVENUE.

### No. 5810.

Circuit Court of Appeals, Sixth Circuit.

Feb. 5, 1932.

John D. Fackler and Orville Smith, both of Cleveland, Ohio (Carmi A. Thompson and Joseph B. Shepler, both of Cleveland, Ohio, on the brief), for petitioner.

W. C. Thompson, of Washington, D. C. (G. A. Youngquist, Asst. Atty. Gen., and Sewall Key, John H. McEvers, E. C. Crouter, C. M. Charest, and William E. Davis, all of Washington, D. C., on the brief), for respondent.

Before MOORMAN, HICKS, and HICKENLOOPER, Circuit Judges.

HICKENLOOPER, Circuit Judge.

On June 16, 1923, George W. Crile was the owner of an undivided three-fourths interest in certain improved real estate in the city of Cleveland. On the date mentioned he received an offer from the East Sixty-Third Euclid Company in which that company offered "to pay the sum of $100,000 for the buildings" erected upon this property, and to enter into a perpetual lease of the lot or land upon which such buildings stood. The proposed lease did not purport to convey the buildings apart from the land or to permit their severance and removal at the will of the lessee, but required them to be maintained in good condition by such lessee and to be replaced, in the event of removal under designated conditions, by other buildings of concededly greater value. This offer was accepted, the lease was executed, and the sum of $100,000 was paid. Thereafter, in his income tax return for 1923, Dr. Crile claimed a loss of $59,960.89 said to have resulted from the sale of the buildings, which then had a depreciated value of $159,960.89. The commissioner disallowed the deduction, and assessed the taxpayer upon additional income in the amount of $100,000, as a bonus paid

for the leasehold estate. The Board of Tax Appeals affirmed.

Two different lines of argument are pursued by the petitioner. It is first claimed in the briefs that the sale of the buildings and the lease of the ground were independent transactions separately permissible under the established real estate law of Ohio, that the statute of frauds was satisfied by the written offer and acceptance, and that thereby a title to the buildings, as distinct from the land, was created in the so-called purchaser. It is also suggested in the alternative that the $100,000 payment is properly to be considered as a payment on account of the purchase price of the property as a unit, the privilege of purchase price fixed by the lease being reduced in that amount, but without the creation of any fixed obligation on the part of the lessee to pay the balance of the purchase price, referred to in the lease as "the privilege of purchase price." Thus, it is urged, the $100,000 is a return of capital, and should not be taxed as income for 1923, regardless of whether the deduction was properly disallowed, or whether, if the property subsequently reverted, this payment would then be regarded as income, in whole or in part, or merely as liquidated damages.

The latter argument above stated is much the more persuasive. Doubtless rentals may be paid in part in advance, and in part in installments during the continuance of the lease, and when this is the proper interpretation of the acts of and instruments executed by the parties, the initial payment is truly income. Where, however, there is an intent to create in the "lessee" an interest in the property itself—as by way of purchase—even though that interest may be forfeitable by failure to perform conditions subsequent, and this intent is made manifest by the instruments duly executed to carry it into effect, the attending payment is a return of capital and should be so regarded, at least prior to forfeiture and reversion. There is, of course, no legal obstacle to one tenant in common leasing the interest of another tenant in common, and we assume that the undivided interest of such lessee tenant in common may consist of a definitely designated portion, or of the whole, of the building erected upon such lot, as well as of a proportionate interest in the entirety (Cincinnati College v. Yeatman,

30 Ohio St. 276); but in each such case two questions arise: (1) Whether there has been in effect a constructive conversion of real property into personalty (Cf. Case Mfg. Co. v. Garven, 45 Ohio St. 289, 13 N. E. 493); or, if this be not the effect of the acts of the parties, (2) whether there has been a legally sufficient and valid conveyance of, or the creation of a legal or equitable estate in, the buildings, not as personalty, but as realty, operating thus to create the requisite tenancy in common in such realty.

In the present case there was obviously no intent to effect a constructive conversion, for no present right of severance and removal was given, or future right, except upon an accompanying expenditure of the full value of the buildings for the direct or indirect benefit of the owner of the fee of the land. Was there then a legally sufficient and valid conveyance of, or the creation of a legal or equitable estate in, the buildings as realty? We are constrained to find that there was not. The offer to "purchase" the buildings and its acceptance at best created but an executory contract of sale, which, although satisfying the statute of frauds as to such contracts (Ohio General Code, § 8620), was wholly ineffective as a conveyance. Ohio General Code, § 8510; Richardson v. Bates, 8 Ohio St. 257, 261, 262; Langmede v. Weaver, 65 Ohio St. 17, 30, 31, 60 N. E. 992. The want of such conveyance was not cured by the lease into which all antecedent negotiations and agreements were merged. We are of the opinion that thereafter even the right of specific performance, upon which the creation of an equitable estate must depend, ceased to exist. The lease, and the lease alone, became the declaration and embodiment of the agreement of the parties, and under it the payment can be classified only as a bonus paid for the leasehold estate, as a consideration in the nature of rental. We are not here and now concerned with whether there might have been a reformation of the contract of lease. We must accept the situation as we find it. Under these circumstances there is no escape from the conclusion, not only that the deduction was properly disallowed, but that the payment of $100,000 was taxable income in such proportion as it was in fact for the benefit of petitioner.

Affirmed.