NORTHWEST UTILITIES SECURITIES CORPORATION v. HELVERING, Commissioner of Internal Revenue.*

No. 9719.

Circuit Court of Appeals, Eighth Circuit.

Nov. 10, 1933.

---

*Rehearing denied January 5, 1934.

Leland W. Scott, of Minneapolis, Minn. (Junell, Driscoll, Fletcher, Dorsey & Barker, of Minneapolis, Minn., on the brief), for petitioner.

F. Edward Mitchell, Sp. Asst. to Atty. Gen. (Pat Malloy, Asst. Atty. Gen., and Sewall Key and A. H. Conner, Sp. Assts. to Atty. Gen., on the brief), for respondent.

Before GARDNER, WOODROUGH, and VAN VALKENBURGH, Circuit Judges.

WOODROUGH, Circuit Judge.

This is an appeal from decisions of the Board of Tax Appeals approving deficiencies in income taxes of petitioner for the calendar years 1927, 1928, and 1929. It appears that the taxpayer is a corporation of the state of Delaware, with its principal office in Minneapolis, Minn. In March, 1927, it entered into a written contract of sale with Thompson, Ross & Co., a corporation, whereby it sold to that corporation various commercial securities for the price of $2,400,000, payable $1,975,000 in cash and the balance in stock of a New Jersey corporation which Thompson, Ross & Co. agreed to repurchase within two years. A payment of $50,000 was made at the time of the signing of the contract. An amendment to the contract provided that delivery of the assets was to be made on or before June 1, 1927, at which time final payment was to be made. The contract contained the provision that the Ross Company would, on or before March 20, 1927, cause its attorneys to examine all legalities concerning corporate organization, titles, liens, franchises, issuance of securities, etc., and if counsel, as a result of such examination, should advise that in their opinion such legal matters are in such shape that it is inadvisable from a legal standpoint to consummate the purchase, then upon notice on or before March 20, 1927, the agreement should be terminated. On May 10, 1927, the taxpayer's stockholders formally ratified the sale of its assets, and by resolution directed the board of directors to carry out its terms. They also, by resolution, authorized the directors, should they deem it advisable, to liquidate the property and business of the corporation, pay the corporate indebtedness, and distribute the proceeds to the stockholders.

On the same date the taxpayer's board of directors, by resolution, directed the transfer of all of the corporate assets to Lane, Piper & Jaffrey, Inc., L. P. Runkel, and G. A. Stevens as trustees for the purpose of liquidating such assets, paying the corporate indebtedness and distributing any balance remaining to the stockholders. Thereafter, on May 14, 1927, a conveyance of all of the corporate assets in trust for the purposes named in the resolutions of the stockholders and directors was made by the taxpayer corporation to said trustees. The trust instrument also provided that pending liquidation, Lane, Piper & Jaffrey, Inc., should have actual charge of all funds constituting a part of the trust estate which should be held as a general deposit upon which it should pay interest at rates to be agreed upon from time to time between it and the two other trustees. The trustees had an account receivable with Lane, Piper & Jaffrey, Inc., from May, 1927, to October, 1930, on which interest in the amount of $19,710.37 was paid by Lane, Piper & Jaffrey, Inc., to the trustees in 1930. The interest rate was 4 per cent.

The trustees delivered the assets to Thompson, Ross & Co. under the terms of the sale contract of March 8, 1927, and received the balance of the purchase price, which, except for the sum of $96,729 still retained, they disbursed according to the terms of the trust instrument during 1927 and 1928. The stock in the New Jersey corporation was repurchased by Thompson, Ross & Co. in 1928, and the resultant gains occasioned the deficiency asserted for that year. The deficiency for the year 1929 was because of interest credited to the account of the trustees during that year. There was no proof of formal dissolution of the corporation.

The Commissioner determined that the trustees were trustees in dissolution, and that the gains derived from the sale of the corporate assets and the income derived from interest was income of the corporation, taxable to it. The Board of Tax Appeals sustained the deficiencies in the income taxes for the calendar years 1927, 1928, and 1929.

The petitioner does not question the computations of the amounts arrived at by the Commissioner, but assigns errors to the effect that the income taxes should have been assessed against the individual stockholders and not against the corporation.

Section 239 (a) of the Revenue Act of 1926, c. 27, 44 Stat. 9, 45, USCA tit. 26, § 991 (a) provides in part as follows: "In cases where receivers, trustees in bankruptcy, or assignees are operating the property or business of corporations, such receivers, trustees, or assignees shall make returns for such cor-

porations in the same manner and form as corporations are required to make returns. Any tax due on the basis of such returns made by receivers, trustees, or assignees shall be collected in the same manner as if collected from the corporations of whose business or property they have custody and control."

The above-quoted provisions have appeared in substantially the same form in all of the revenue acts beginning with that of 1916 (section 13 [c] of the Revenue Act of 1916, c. 463, 39 Stat. 756, 771; section 239 of the Revenue Act of 1918, c. 18, 40 Stat. 1057, 1081; section 239 [a] of the Revenue Acts of 1921, c. 136, 42 Stat. 227, 259, 1924, c. 234, 43 Stat. 253, 287 [U. S. C. title 26, § 991, 26 USCA § 991], and 1926, supra; section 52 [a] of the Revenue Acts of 1928, c. 852, 45 Stat. 791, 808 [U. S. C. Supp. V, title 26, § 2052 (a), 26 USCA § 2052 (a)], and 1932, c. 209, 47 Stat. 169, 188 [U. S. C. Supp. VI, title 26, § 52 (a), 26 USCA § 3052 (a)]), and have been uniformly construed by the administrative agency of the government having charge of its enforcement as applying to trustees in dissolution. Article 548, Treasury Regulations 69, promulgated under the Revenue Act of 1926, supra, specifically provides that sales of property by trustees in dissolution are to be treated as if made by the corporation: "Art. 548. *Gross Income of Corporation in Liquidation*—When a corporation is dissolved, its affairs are usually wound up by a receiver or trustees in dissolution. The corporate existence is continued for the purpose of liquidating the assets and paying the debts, and such receiver or trustees stand in the stead of the corporation for such purposes. (See section 282 and articles 1293 and 1294.) Any sales of property by them are to be treated as if made by the corporation for the purpose of ascertaining the gain or loss. No gain or loss is realized by a corporation from the mere distribution of its assets in kind upon dissolution, however they may have appreciated or depreciated in value since their acquisition. (See further articles 622 and 1545.)"

The same provisions have appeared in the Treasury Regulations promulgated under the prior, as well as the subsequent, Revenue Acts. Article 547, Regulations 45 (Act of 1918); article 548, Regulations 62 (Act of 1921), and 65 (Act of 1924); article 71, Regulations 74 (Act of 1928) and 77 (Act of 1932). Article 622 of Treasury Regulations 69, promulgated under the Revenue Act of 1926, supra, provides: "Receivers, trustees in dissolution, trustees in bankruptcy, and as-

signees, operating the property or business of corporations must make returns of income for such corporations on Form 1120, covering each year or part of a year during which they are in control. Notwithstanding that the powers and functions of a corporation are suspended and that the property and business are for the time being in the custody of the receiver, trustee, or assignee, subject to the order of the court, such receiver, trustee, or assignee stands in the place of the corporate officers and is required to perform all the duties and assume all the liabilities which would devolve upon the officers of the corporation were they in control. (See section 282 and articles 1293 and 1294.) A receiver in charge of only part of the property of a corporation, however, as a receiver in mortgage foreclosure proceedings involving merely a small portion of its property, need not make a return of income. (See articles 424 and 548.) (Section 282 and articles 1293 and 1294 relate to trustees in bankruptcy or receivers and are not applicable to this case.)"

The same provisions also appear in regulations promulgated under the prior as well as subsequent Revenue Acts. Article 622, Regulations 45, 62, and 65; article 392, Regulations 74 and 77. These regulations are not in conflict with any of the statutory provisions relating to the subject-matter; are reasonably adapted to carry out the intent of Congress, and have been adhered to by the executive department in charge of the administration of the revenue laws for some fifteen years. In the meantime Congress has repeatedly re-enacted without change the statute to which the regulations apply. They ought not to be disturbed, unless plainly wrong. Universal Battery Co. v. United States, 281 U. S. 580, 583, 50 S. Ct. 422, 74 L. Ed. 1051.

This administrative interpretation and the legality of the regulations applicable in the premises have been specifically upheld in cases which may not be distinguished from the instant case in principle. In Taylor Oil & Gas Co. v. Commissioner, 47 F.(2d) 108, 109, certiorari denied 283 U. S. 862, 51 S. Ct. 655, 75 L. Ed. 1467, the Circuit Court of Appeals (Fifth Circuit) specifically upheld the first regulation above referred to and applied it to a situation where the trustees were named by the corporation and sold the corporate assets. Some negotiations for the sale of the assets had been entered into prior to the naming of the trustees. The court, nevertheless, held that the sale by the trustees was the act of the corporation, irrespective of whether or not the antecedent contract of sale

was executory or executed. The court said: "It may be doubted that the contract of sale was merely executory. Except for executing the formal deed, there was nothing to be done. The price, the thing, and the effective time of delivery, December 15, 1919, had been agreed upon. But, if it was executory, it was still the contract of the company to be executed before there could be any liquidation of its affairs. Conceding for the purpose of argument that the legal title to the property vested in the trustees by the dissolution, no part of the title passed to the stockholders thereby. The real owner was still the company until such time as its affairs were liquidated, the debts paid, and the residue distributed to the stockholders. The profit on the transaction was earned by the corporation, and the assessment of the taxes based thereon was valid."

In Burnet v. Lexington Ice & Coal Co., 62 F.(2d) 906, 909, the regulation was again upheld by the Circuit Court of Appeals in the Fourth Circuit. The trustee in dissolution, who was the principal stockholder of the corporation, sold the corporate assets after his appointment as trustee. The court said: "We agree with the conclusion reached in the Taylor Oil & Gas Company Case and by the Board of Tax Appeals in its more recent decisions that the sale was a sale by the taxpayer company and the profits were properly taxable."

In Hellebush v. Commissioner, 65 F.(2d) 902, the Circuit Court of Appeals in the Sixth Circuit upheld the same article as is here involved and applied it where trustees in dissolution were appointed, the corporate property conveyed to them and in turn sold by the trustees all on the same day; the steps being taken in the order named. Negotiations for the sale had been entered into by officers of the corporation prior to the taking of formal action. See, also, Wells Fargo Bank & Union Trust Co. v. Blair, 58 App. D. C. 160, 26 F.(2d) 532.

In addition to the above cases which reached the courts, the Board of Tax Appeals has consistently applied the principle involved. Southern Ice & Fuel Co. v. Commissioner, 10 B. T. A. 1213; Duggan v. Commissioner, 18 B. T. A. 608; Boggs-Burnam & Co. v. Commissioner, 26 B. T. A. 988 (pending on review [C. C. A. 6th]); Hellebush v. Commissioner, 24 B. T. A. 660; Nibley-Mimnaugh Lumber Co. v. Commissioner, 26 B. T. A. 978.

We find no decisions to sustain the contention of the petitioner that the regulations should not be applied in this case. In the case of Snead v. Elmore (C. C. A.) 59 F. (2d) 312, cited and relied on, an actual and valid sale of the assets was made by the corporation to its stockholders, in consideration of their assumption of the corporation's liabilities and surrender of the corporate stock. Although a surplus over debts and capital stock was shown on the books, the corporation was losing money and had little cash or credit. The transaction did not occasion any profit or gain to the corporation. The corporation was dissolved and the gain ultimately made out of the transaction was taxable to the purchasers.

In the case of Tootle v. Commissioner (C. C. A.) 58 F.(2d) 576, also relied on, stockholders in the Aunt Jemima Mills Company contested an assessment against them on account of dividends paid to them by the corporation out of the proceeds derived from the sale of corporate assets. The question was whether the dividend was to be treated for taxation as an ordinary dividend, or a dividend in course of liquidation. The court held that the dividend was one received in liquidation and taxable as such, and that section 201 of the Revenue Act of 1926 (26 USCA § 932) was applicable.

We have examined Lonsdale v. Commissioner (C. C. A.) 32 F.(2d) 537, also cited, and find it to have no application here.

The petitioner also contends that the fact that the statutory method of effecting dissolution of the corporation was not followed takes this case out of the operation of the statute and the applicable regulations. Whether the statutory method is followed is unimportant. The arrangement which the parties made was satisfactory to themselves, and the court is concerned with the substance and not the form of what was done. Hunn v. United States (C. C. A.) 60 F.(2d) 430.

The decisions of the Board of Tax Appeals are in accord with the uniform administrative interpretation of the applicable statute and the decision of those courts where the question has been considered, and should be affirmed.