**GATES v. HELVERING, Commissioner of Internal Revenue.**

**No. 9725.**

Circuit Court of Appeals, Eighth Circuit.

Feb. 21, 1934.

Claude W. Dudley, of Washington, D. C. (Henry W. Fox, of Kansas City, Mo., on the brief), for petitioner.

J. Louis Monarch, Sp. Asst. to Atty. Gen. (Sewall Key, Sp. Asst. to Atty. Gen., and E. Barrett Prettyman, Gen. Counsel, Bureau of Internal Revenue, and A. H. Fast, Sp. Atty., Bureau of Internal Revenue, both of Washington, D. C., on the brief), for respondent.

Before STONE, SANBORN, and VAN VALKENBURGH, Circuit Judges.

SANBORN, Circuit Judge.

This is a petition to review a decision of the Board of Tax Appeals determining a deficiency in the income tax of the petitioner for the year 1925. 26 B. T. A. 998.

Jemuel C. Gates, of Kansas City, Mo., the owner of the Gates building and the land on which it is situated in that city, died testate August 2, 1915. Under his will, trustees, one of whom was the petitioner, took title to the property until August 3, 1925, at which time the trust terminated. On April 2, 1919, the property was leased to J. H. Hettinger and others for ten years from December 20, 1920. On April 20, 1925, the petitioner, the sole surviving trustee, together with beneficiaries of the trust, conveyed the building, separate from the land, to DeVere Dierks for a consideration of $186,269.46, $100,000 of which was in cash and the balance represented by four promissory notes for $21,567.39 each, dated April 20, 1925, due, respectively, in one year, two years, three years, and four years, and bearing interest at 5 per cent. per annum. Payment of the notes was secured by a trust deed covering the building. The

warranty deed conveying the building to Dierks is expressly made subject to the Hettinger lease and to a 99-year lease of the ground to Dierks and "subject to all of the terms, provisions, covenants, liens, and incumbrances provided in" that lease. The deed also provides that the grantors reserve the fee title to the land upon which the building is situated.

The 99-year lease of the ground, contemporaneously executed by the petitioner and the beneficiaries of the trust, to Dierks was dated April 20, 1925, and provided for a rental of $26,666.06 to December 19, 1925, $45,000 per annum for the period from December 20, 1925, to December 20, 1930, and $50,000 per annum for the balance of the term. It provided that the lessee might demolish, repair, and rebuild the building and add additional stories thereto, except that nothing should be done to weaken the support of any building, diminish the value thereof, or make it structurally dependent on another building; the lessee to furnish a bond before demolishing, altering, or making additions to the premises; the new or remodeled building to cover substantially the entire leased land, and, when completed, to be of a value at least as great as the then value of the building thereon and in no event less than $225,000. It also provided that the lessee should keep the premises in good condition, repair, and preservation and insured against loss by fire and tornado for the benefit of the parties to the lease; that the lessee might sell, assign, mortgage, incumber, or otherwise dispose of the lease in any bona fide transaction to any responsible party, and might also sublet the premises; that the lessors concurrently therewith had "severed from the realty and sold, conveyed and transferred to the lessee" the Gates building situated upon the leased premises, subject to a mortgage to secure the $86,-269.46 in notes and subject to the 99-year lease to Dierks, and that "said building and any additions or betterments thereto are and shall be security for the faithful performance by the lessee of all the terms and conditions of this lease"; and that, in case of forfeiture or termination of the lease, any building on the premises should re-attach to the realty and be taken as liquidated damages for "breach of the covenant on account of which this lease shall have been so forfeited or terminated"; and that, upon the termination of the lease, the buildings, together with the improvements and fixtures, except trade fixtures, should be the property of the lessors.

Dierks subsequently acquired the Hettinger lease and conveyed the building and the leaseholds to the Dierks Investment Company, which borrowed $775,000 on the security of the building and the 99-year leasehold, and this money was used in adding ten stories to the Gates building. The value of the Gates building at the time the petitioner acquired it was $200,000, and its "depreciated cost" on April 20, 1925, was $161,150.69.

The petitioner reported no gains from the disposition of the building upon his income tax return for the year 1925. Upon audit of the return, the Commissioner added to the petitioner's income $186,269.46, the entire amount of the cash and notes received from Dierks on April 20, 1925, on the ground that it was a bonus received for the execution of the 99-year lease. The petitioner appealed to the Board of Tax Appeals, which affirmed the Commissioner.

The taxpayer's claim is that the sale of the building and the lease of the land were in fact and in law separate and distinct transactions, and that the $186,269.46 was received as the purchase price of the building and was not income, but that, if it was income, only $100,000 of it was received in 1925, and that the balance represented by notes would only become income in the years the notes were paid.

There is no suggestion that in doing what was done the petitioner had any intent to evade his income tax liability. His purpose was to secure as large an amount of cash as possible for distribution to the beneficiaries of his trust upon its termination in August, 1925.

The Board of Tax Appeals was of the opinion that the conveyance of the building and the lease of the land constituted a single transaction amounting to a lease of the entire property for 99 years in consideration of a bonus of $186,269.46 and the annual rentals provided for in the lease.

It is impossible to avoid the conclusion that the deed of the building and the lease of the land constitute a single transaction. They are, by their terms, inseparable. The building is to be held by the grantee in the deed subject to the terms of the lease. His rights to deal with it are restricted by the lease, and, when the lease terminates, the building reattaches to the land and reverts to the owners of the fee. All that was accomplished by the two instruments could have been provided for in the lease alone.

It is conceded that whatever the petitioner received by way of rentals from Dierks in the

year 1925 was taxable income, and it is also conceded that, if what Dierks paid to the petitioner on April 20, 1925, was the purchase price of the building, there was a taxable profit of $25,118.77—the excess of $186,269.-46 over the "depreciated cost" of $161,150.69.

The practical effect of what was done on April 20, 1925, was· this: Dierks secured the right to the possession and use of the building and the land for 99 years in accordance with the terms of the lease. He paid for that right $100,000 in cash and agreed to pay, in addition to the rents reserved in the lease, $21,-567.39 on April 20th of each of the four years following the execution of the lease, in accordance with the terms of four promissory notes secured by a trust deed of the building. The $100,000 in cash was, in effect, rent paid in advance. It is probably not important whether it be called a bonus in the nature of advance rentals or advance rentals. It was a part of the consideration which the lessee was to pay for what he received, and what he received was a leasehold interest in the land and an equivalent interest in the building. When his interest in the land ended, his interest in the building ended with it, and both reverted to the owners of the land.

The situation presented is similar to that dealt with by the Circuit Court of Appeals of the Sixth Circuit in Crile v. Commissioner of Internal Revenue, 55 F.(2d) 804, certiorari denied 287 U. S. 600, 53 S. Ct. 7, 77 L. Ed. 600. The court in that case held that a payment by a lessee purporting to be for buildings upon leased land constituted taxable income as a bonus paid for a leasehold estate, as a consideration in the nature of rental. To the same effect is the decision of the Board of Tax Appeals in Minneapolis Syndicate v. Commissioner, 13 B. T. A. 1303. See, also, Burnet v. Harmel, 287 U. S. 103, 53 S. Ct. 74, 77 L. Ed. 199. Taxation, after all, is eminently practical and, in dealing with tax problems, the court is more concerned with substance and results than with form. Tyler v. United States, 281 U. S. 497, 503, 50 S. Ct. 356, 74 L. Ed. 991, 69 A. L. R. 758; Northwest Utilities Securities Corporation v. Helvering (C. C. A. 8) 67 F.(2d) 619, 620. In the case before us the Board was justified in concluding that what was in form the consideration for the purchase of the building was in substance rental paid for the ground and building.

We are not in accord, however, with the conclusion of the Board that the $86,269.46 represented by promissory notes, none of which was payable in the year 1925, constituted income for that year. If this had been a sale, as the petitioner contends, then to the extent of their value the notes should have been treated as cash in order to determine whether there was a gain or a loss from the sale. Pinellas Ice & Cold Storage Co. v. Commissioner, 287 U. S. 462, 468, 469, 53 S. Ct. 257, 77 L. Ed. 428. See also: Appeal of Aaron W. Wolfson, 1 B. T. A. 538; ·S. L. Meyer, Executor, etc., v. Commissioner, 23 B. T. A. 1201, 1204; Appeal of H. J. Kelly, 3 B. T. A. 257, 259; W. B. Geary v. Commissioner, 6 B. T. A. 1109. Article 34, Regulations 69, promulgated under the Revenue Act of 1926, provides that "notes or other evidences of indebtedness received in payment for services, and not merely as security for such payment, constitute income to the amount of their fair market value." See, also, Kyle v. Commissioner of Internal Revenue (C. C. A. 3) 43 F.(2d) 291, 293.

We do not, however, think that the rule relating to promissory notes taken in connection with a sale or exchange of property, or the regulation with respect to notes taken in payment for services, is determinative of the question in this case. The fact that the promise of Dierks to pay $21,567.39 in each of the four years following the year 1925 is represented by promissory notes secured by a trust deed does not, in our opinion, make those notes the equivalent of rentals received in the year 1925. The government is not entitled to treat the disposition of the building as a sale for the purpose of having the notes regarded as cash and as a lease for the purpose of reaching the consideration paid on April 20, 1925, as income. There is nothing to show that the petitioner discounted the notes, and, so far as we are advised, we must assume that the lessee paid during each of the four years subsequent to 1925 $21,567.39, in addition to the rents reserved in the lease, in fulfillment of his agreement as evidenced by the notes. Had his promise to pay these additional amounts as rentals during the four years in question been included in the lease, as it might well have been, no suggestion would have been made that the $86,269.46 was taxable for the year 1925. The question is not free from doubt, but, under all the circumstances, we think the taxpayer should not have been required to treat as rental received on April 20, 1925, more than the $100,000 in cash.

The decision of the Board is reversed in so far as it holds that the promissory notes

received on April 20, 1925, were taxable income for the year 1925. The case is remanded, with directions to the Board to make a redetermination of the petitioner's deficiency in income tax for that year in accordance with this opinion.