## LINDLEY'S TRUST NO. 1 et al. v. COMMISSIONER OF INTERNAL REVENUE.

## LINDLEY'S TRUST NO. 2 et al. v. SAME.

### Nos. 11952, 11953.

Circuit Court of Appeals, Eighth Circuit.

June 24, 1941.

Kenneth Taylor, of Minneapolis, Minn. (Richard T. Angell and Kingman, Cross, Morley, Cant & Taylor, all of Minneapolis, Minn., on the brief), for petitioners.

Samuel H. Levy, Sp. Asst. to the Atty. Gen. (Samuel O. Clark, Jr., Asst. Atty. Gen., and Sewall Key, Sp. Asst. to the Atty. Gen., on the brief), for respondent.

Before GARDNER, and JOHNSEN, Circuit Judges, and COLLET, District Judge.

COLLET, District Judge.

This case is here on petition to review a decision of the Board of Tax Appeals affirming the Commissioner of Internal Revenue's action in making certain deficiency assessments against petitioners, the Clarkson Lindley Trust No. 1, Anna Gale Lindley, Charlotte Lindley Wurtele and Alfred D. Lindley, trustees, and Clarkson Lindley Trust No. 2, Anna Gale Lindley, Charlotte Lindley Wurtele and Alfred D. Lindley, trustees. Both petitions were submitted together, and since the issues are the same both will be treated as one case.

On May 10, 1924, Clarkson Lindley was the owner in fee of certain improved real estate in the City of Minneapolis, Minnesota. On that date he entered into a lease with the S. S. Kresge Company for a period of thirty-five years beginning June 1, 1924, with an option to renew for an additional sixty-four years. The payment of annual rentals was provided for and in addition thereto the lease provided that on the first day of June, in each of the years 1924 to 1927, inclusive, the lessees should deposit with a trust company as depositary $50,000 par value of United States Government bonds or Treasury certificates. The lease provided that the depositary should retain the bonds until default in the performance of the terms of the lease on the part of the lessee or until six months subsequent to the death of Clarkson Lindley, at which time the bonds should be delivered to the latter's estate. The income from the bonds prior to their delivery by the depositary to the estate of Clarkson Lindley was to be delivered to the lessee. The lease contained a further provision that at the time the full $200,000 of bonds had been deposited with the depositary the title to the buildings on the leased premises should pass to the lessee One of petitioners' contentions is that the lease in fact provided for the sale of these buildings to the lessee, the purchase price therefor being the aforementioned bonds. The lease provided, however, that if any of the buildings located on the demised premises were destroyed or removed, the lessee should restore them in twelve months. The lessee was given the right to remove the buildings and construct new ones in their place but as a condition precedent to such action was required to give a bond equal to the demolition cost plus the cost of erecting the new buildings, which new buildings were required to be of at least equal value to the buildings removed. The buildings on the premises at the time of the execution of the lease were to be insured by the lessee, with any loss payable to the lessor to the extent necessary for restoration purposes. The lessee had the right to make alterations in the existing buildings which would not substantially diminish their value and was obligated to maintain the buildings in good condition and finally at the termination of the lease the title to all buildings on the premises was to revert to the owner of the fee.

On May 20, 1932, Clarkson Lindley established a trust and by formal instrument conveyed to the trust an undivided one-half interest in the fee of the real estate leased and an undivided one-half interest in the Kresge lease together with a "one-half interest in and to all securities deposited pursuant to Paragraph V of said lease."

Later, on December 28, 1934, Clarkson Lindley conveyed an additional one-quarter interest in the fee, the Kresge lease and the securities deposited pursuant to Paragraph V thereof to the same trust. The terms of the latter conveyance were sub-

stantially similar to if not identical with the trust conveyance of May 20, 1932.

The requirement of the lease relative to the deposit of the bonds was complied with, and the last of the bonds were deposited on June 1, 1927.

Clarkson Lindley died July 26, 1935, approximately eight years after the last bonds were deposited. After his death, on October 2, 1935, a portion of the bonds were delivered by the depositary to the trusts by a special arrangement between the trusts, the estate, and the Kresge Company. Those bonds were sold in 1935. The remainder of the bonds were delivered to the trusts on January 26, 1936, and sold during that year. The trusts kept books upon a cash basis. Clarkson Lindley paid no income tax on the bonds at the time they were deposited with the depositary. There was no gift tax in effect at the time of the first trust conveyance in 1932 but he paid (apparently without compulsion) a gift tax on the one-fourth share of the $200,000 of bonds at the time of the second trust conveyance in 1934. He kept his books on the cash basis.

The Commissioner treated the delivery of the bonds by the depositary to the trusts in October, 1935, and January, 1936, as rent received on those dates by the trusts from the trusts' interest in the leased real estate, and characterized the transaction as the receipt of ordinary income. The trusts having treated the bonds as a capital asset, had not reported their transfer as ordinary income, hence the assessment of the deficiency which the Board approved and from which latter action these petitions to review are taken. Two questions are presented for determination.

First: It is contended that the bonds represented the purchase price of the buildings on the premises at the time of the execution of the lease and should, therefore, be treated as capital assets of Clarkson Lindley, attaining that characteristic, as distinguished from rents from the real estate, at the date of the execution of the lease or at the latest, upon January 1, 1927, when the last of the bonds were deposited. If that position be correct it is conceded that the bonds became a part of the corpus of the trust estates and were not subject to treatment as ordinary income to the trust estates in 1935 and 1936.

The theory upon which the contention is based is that by operation of the lease a separate and distinct estate was carved out of the original estate and completely segregated therefrom. If the facts justified that result the subsequent conveyance of the bonds by the trust agreements would constitute a conveyance of a right to the receipt of the new estate, and not merely the conveyance of the right to receive the bonds as rental income from the real estate contemporaneously conveyed.

The bonds did not represent the purchase price of the buildings. The terms of the lease contradict that theory. The lessor retained all of the usual proprietary rights of a landlord in the buildings under the terms of the lease. If they were destroyed the lessee was bound to rebuild. If the lessee decided to remove them it was bound to replace them with buildings of at least equal value with adequate protection to the lessor that the obligation would be carried out. At the termination of the lease the existing buildings or those erected in their stead were to revert to the landlord's estate. The result of those provisions was that at the termination of the lease the landlord would still have the original or equivalent buildings intact. It is impossible, therefore, that a part of the buildings could be theoretically residing in the hands of the depositary or the trust estates in the form of bonds. The situation is similar to the one presented in Gates v. Helvering, 8 Cir., 69 F.2d 277, and Crile v. Commissioner, 6 Cir., 55 F.2d 804.

The second proposition advanced is that even if the provision of the lease relative to the deposit of the bonds did not amount to a sale of the buildings, yet the bonds represented a fixed, definite and certain estate with the result that the later receipt of that estate should be treated as the gift of a separate estate exempt from income taxation.

The answer to the first contention to an extent determines this question. That is true because the conveyance of the right to the trusts to later receive the bonds may not be treated as the conveyance of a capital asset or a separate, fixed, definite, and certain estate unless the bonds constituted such an estate. It has heretofore been demonstrated that the bonds did not represent a separate estate in the sense that they took the place of a one-fourth interest in the buildings.

The only remaining question is whether the bonds constituted a bonus for the execution of the lease, which bonus was

a separate estate wholly segregated from the buildings or the land, and not possessing any of the characteristics of income or rent from the buildings or the land. The suggested distinction is a close one at best and relies upon the premise that the consideration for the use of the property may be divided into two classifications—one of rent which flows from the use of the premises as that use is realized, the other a lump sum payment somewhat in the nature of anticipated rents and somewhat of the character of a bonus. The distinction presupposes that rents may not be collected as a species of anticipatory damages after the use of the premises by the tenant ceases. The latter theory has been applied in many instances to the allowance of claims in bankruptcy courts prior to the recent amendments of the Bankruptcy Act. See Manhattan Properties, Inc. v. Irvin Trust Co., 291 U.S. 320, 54 S.Ct. 385, 78 L.Ed. 824 and Connecticut Ry. Co. v. Palmer, 305 U.S. 493, 59 S.Ct. 316, 83 L.Ed. 309. But whatever may be the correct rule relative to the existence of a cause of action for anticipatory damages upon the breach of a contract for the rental of real estate, it is not of great consequence here since the facts heretofore related preclude the distinction and require the conclusion that the bonds were income from the real estate and bore the characteristic of rental which had not been severed from the reversion.[1] Since the trust received the bonds not in the form of a separate estate segregated and distinguished from the real estate but received them with and unsevered from the reversionary interest in the real estate and since petitioners' books were kept on a cash basis the income was taxable in the year received.[2]

This case is clearly distinguished from Dobbins v. Commissioner of Internal Revenue, 3 Cir., 31 F.2d 935 and Commissioner of Internal Revenue v. Dobbins, 3 Cir., 72 F.2d 984, and Peak v. Commissioner of Internal Revenue, 8 Cir., 80 F.2d 761. In those cases separate estates existed consisting of the right to the receipt of certain emoluments. The right was the corpus and the right was entirely distinct and separate from any proprietary interest in the corporal estate.

The judgment is affirmed.

---

[1] Fisher v. Heller, 174 Minn. 233, 219 N.W. 79; In re Owsley's Estate, 122 Minn. 190, 142 N.W. 129; Butt v. Ellett, 19 Wall. 544, 22 L.Ed. 183; Equitable Life Ins. Co. v. Bowman, 225 Mo. App. 855, 32 S.W.2d 126.

[2] Renwick et al. v. United States, 7 Cir., 87 F.2d 123. Commissioner v. Lyon, 9 Cir., 97 F.2d 70.