## MANHATTAN PROPERTIES, INC. *v.* IRVING TRUST CO., TRUSTEE IN BANKRUPTCY.*

No. 505.   Argued January 10, 1934.—Decided February 5, 1934.

---

* Together with No. 506, *Brown et al.* v. *Irving Trust Co., Trustee in Bankruptcy,* certiorari to the Circuit Court of Appeals for the Second Circuit.

*Mr. William D. Mitchell,* with whom *Messrs. C. Dickerman Williams, Rollin Browne, Ralph Montgomery Arkush,* and *Amos J. Peaslee* were on the brief, for petitioners.

322

324

Mr. *Frederick H. Wood,* with whom *Messrs. Harold L. Fierman* and *William D. Whitney* were on the brief, for respondent.

By leave of Court, briefs of *amici curiae* were filed as follows: by *Messrs. W. Randolph Montgomery, Edwin M. Otterbourg,* and *Charles A. Houston,* on behalf of the National Association of Credit Men; *Messrs. Joseph F. Mann, Harry J. Gerrity,* and *Donald Adams Powell,* on behalf of the National Association of Building Owners and Managers; *Messrs. Rollin Browne* and *Ralph Montgomery Arkush,* on behalf of numerous owners of real property; *Mr. Reese D. Alsop,* on behalf of the Cotton Textile Merchants Association of New York; *Messrs. Arthur A. Ballantine* and *Henry J. Friendly,* on behalf of the Trustees in Bankruptcy of Paramount Publix Corp.; *Mr. Godfrey Goldmark,* on behalf of the Trustee in Bankruptcy of McCrory Stores Corp.; *Messrs. Charles Tuttle* and *Robert P. Levis,* on behalf of the Creditors Advisory Committee of McCrory Stores Corp. and McLellan Stores Co.; and *Messrs. Alanson W. Willcox* and *Bertram F. Willcox,* on behalf of certain landlords.

328

MR. JUSTICE ROBERTS delivered the opinion of the Court.

These cases present the question whether a landlord may prove in bankruptcy for loss of rents payable in the future, where the claim is founded upon the bankrupt's covenant to pay rent, and, in the alternative, upon his breach of a covenant that in event of bankruptcy, the landlord may reënter, and if he does, the tenant will indemnify him against loss of rents for the remainder of the term.

In No. 505 it appears that Oliver A. Olson Co., Inc., was the lessee of premises for a term of nine years and eight months beginning February 1, 1928, and expiring October 1, 1937. Defaults in payment of rent due February and March, 1932, were followed by an involuntary proceeding in which the company was, on March 18, 1932, adjudicated a bankrupt. The total rent reserved for the portion of the term subsequent to bankruptcy was $58,000, and, as the claimant asserted, the present rental value of the leased premises for the remainder of the term was $33,000. The lessor filed its claim, one item being damages for loss of future rentals, which it asked to have liquidated at $25,000, the difference between the rent reserved and the present rental value.

The lease contained a covenant that if the tenant should default in the payment of rent, or abandon the premises, or if they should become vacant, the tenant become insolvent, or make an assignment for the benefit of creditors, or if bankruptcy proceedings should be instituted by or against the tenant, the landlord might without notice reënter the premises; and after obtaining possession, relet as agent for the tenant, for the whole or any part of the term, and from time to time, and:

" The Tenant further agrees to pay each month to the Landlord the deficit accruing from the difference between the amount to be paid as rent as herein reserved and the

amount of rent which shall be collected and received from the demised premises for such month during the residue of the term herein provided for after the taking possession by the Landlord; the overplus, if any, at the expiration of the full term herein provided for shall be paid to the Tenant unless the Landlord within a period of six months from the termination of this lease as provided herein shall, by a notice in writing, release the Tenant from any and all liability created by this provision of the lease, which it is agreed the Landlord shall, at the Landlord's option, have the right to do, in which event it is agreed that the Landlord and the Tenant shall have no further rights and liabilities hereunder."

The referee expunged so much of the claim as sought damages for loss of future rents, holding that it did not constitute a provable debt. The District Court and the Circuit Court of Appeals were of the same opinion.[1]

In No. 506 premises owned by the petitioners were held by the bankrupt under a lease dated June 14, 1920, for a term to expire June 30, 1945. There was a covenant that on default by the lessee, or if it should be adjudicated a bankrupt, the lessor might enter and repossess the premises,

". . . and upon entry as aforesaid this lease shall determine, and the Lessee covenants that in case of such termination it will indemnify the Lessor against all loss of rent which the Lessor may incur by reason of such termination, during the residue of the term above specified."

A voluntary petition was filed and an adjudication entered August 29, 1932. November 23, 1932, the trustee disaffirmed the lease, and three days later the lessors took possession and proceeded to collect rents from the occupants of the demised premises; and January 13, 1933,

---

[1] 66 F. (2d) 470.

they filed a proof of claim which as amended included an item of $4,404.40, representing the difference between the rent accrued to the date of reëntry and the collections from occupants during that period, and an item of $143,-615.80, representing the difference between the alleged rental value for the remainder of the term after reëntry and the rent reserved in the lease. Petitioners made application for liquidation of their claim under § 63 (b) of the Bankruptcy Act. The trustee moved to have the claim expunged and disallowed. The referee disallowed both items, and his action was affirmed by the District Court and the Circuit Court of Appeals.[2]

The controversy hinges upon the interpretation of the following sections of the Bankruptcy Act:

" Sec. 63. *Debts which may be proved.* (a) Debts of the bankrupt may be proved and allowed against his estate which are (1) a fixed liability, as evidenced by a judgment or an instrument in writing, absolutely owing at the time of the filing of the petition. against him, whether then payable or not, with any interest thereon which would have been recoverable at that date or with a rebate of interest upon such as were not then payable and did not bear interest; . . . (4) founded upon an open account, or upon a contract express or implied; . . .

"(b) Unliquidated claims against the bankrupt may, pursuant to application to the court, be liquidated in such manner as it shall direct, and may thereafter be proved and allowed against his estate." [3]

" Section 1 (11). ' Debt ' shall include any debt, demand, or claim provable in bankruptcy." [4]

" Section 17. A discharge in bankruptcy shall release a bankrupt from all of his provable debts, . . ." [5]

---

[2] 66 F. (2d) 473.
[3] U.S.C. Title 11, § 103.
[4] U.S.C. Title 11, § 1.
[5] U.S.C. Title 11, § 35.

A majority of the Circuit Court of Appeals felt bound to follow its earlier decision in *Re Roth & Appel*, 181 Fed. 667, which denied a landlord's right to prove a claim for future rents arising under a similar lease. The view there expressed was that the occupation of the land is the consideration for the rent, and if the right to occupy terminates, the obligation to pay ceases; and the covenant to pay rent creates no debt until the time stipulated for payment arrives. Since many events may occur which will absolve the tenant from further obligation for rent, the claim is said to be too contingent, both because of the uncertainty at the date of adjudication that the lessor will reënter, and the doubt as to his suffering loss of rent if he should reënter.

In the present case one of the judges of the Court of Appeals held that *Maynard* v. *Elliott*, 283 U.S. 273, has settled the provability of claims contingent in the sense that no sum is presently payable, thus destroying the principal ground of decision in *Re Roth & Appel*, and that the estimation of the present worth of payments to be made in the future is no obstacle to the proof of a claim based upon an anticipatory breach. *Central Trust Co.* v. *Chicago Auditorium Assn.*, 240 U.S. 581.

The petitioners say the provability of claims for future rent is a subject on which the lower federal courts have been in disagreement. They argue that a claim for rent is founded upon a lease which is an express contract within the words of § 63 (a) (4). They rely upon the purpose of the bankruptcy law to bring in all contract creditors and to discharge all debts of the bankrupt, so that he may start afresh unembarrassed by old indebtedness, and point to the hardship to an individual bankrupt of not discharging claims for rent which might well prevent his financial rehabilitation, and the unfairness to the landlord of a corporate bankrupt who, under the decision below, cannot prove upon his lease along with other cred-

itors, but must look solely for redress for loss of future rents to a corporate debtor whom bankruptcy has stripped of all assets.

The respondent asserts a substantial difference between rent and other kinds of indebtedness, and presents equitable considerations thought to weigh in its favor, but especially stresses the legislative history of the bankruptcy laws passed by Congress, and insists that the preponderant construction of them by the courts excludes claims for future rents from the class of provable debts.

The issue is not one of power, for plainly Congress may permit such claims or exclude them. The sole inquiry is the intent of the Act. The construction for which the petitioners contend is, as a matter of logic, an admissible one. But that construction is contrary to the great weight of authority as to the effect of similar provisions in earlier Acts, and § 63 of the present Act.

In England such claims were not provable under the Act of 7 Geo. I, c. 31; *Mayor* v. *Steward*, 4 Burr. 2439; and a discharge could not be pleaded in defense of an action for rent accruing subsequent to bankruptcy. *Boot* v. *Wilson*, 8 East 311. The landlord's claim for loss of future rent was made provable by the Act of 32 and 33 Vict., c. 71, § 23 (1869), and more explicit provisions to the same effect were embodied in that of 46 and 47 Vict., c. 52, §§ 37 and 55 (1883).

The Act of Congress, approved April 4, 1800,[6] permitted proof of a limited class of contingent claims, but did not mention rents. Apparently the latter were not considered provable debts under that statute. *Hendricks* v.

---

[6] 2 Stat. 19, Sec. 39. ". . . the obligee of any bottomry or respondentia bond, and the assured in any policy of insurance, shall be admitted to claim, and after the contingency or loss, to prove the debt thereon, in like manner as if the same had happened before issuing the commission; and the bankrupt shall be discharged from such securities, as if such money had been due and payable before the time of his or her becoming bankrupt . . ."

*Judah,* 2 Caines (N.Y.) 25; *Lansing* v. *Prendergast,* 9 Johns. (N.Y.) 127.

The Act of August 19, 1841, §. 5, 5 Stat. 440, 444, expressly allowed proof of contingent claims,[7] specifying certain classes and adding a general description of contingent debts but said nothing about rent. The courts held that the latter was not a provable debt within this section, because neither a present debt nor a contingent claim susceptible of liquidation. *Bosler* v. *Kuhn,* 8 Watts & S. (Pa.) 183; *Stinemets* v. *Ainslie,* 4 Denio (N.Y.) 573; *Savory* v. *Stocking,* 4 Cush. (Mass.) 607.

The Act of March 2, 1867, § 19, 14 Stat. 517, 525, authorized the proof and liquidation of contingent claims, and also proof of a claim for a proportionate part of any rent up to the date of bankruptcy.[8] The courts uniformly

---

[7] ". . . all creditors whose debts are not due and payable until a future day, all annuitants, holders of bottomry and respondentia bonds, holders of policies of insurances, sureties, indorsers, bail, or other persons, having uncertain or contingent demands against such bankrupt, shall be permitted to come in and prove such debts or claims under this act, and shall have a right, when their debts and claims become absolute, to have the same allowed them; and such annuitants and holders of debts payable in future may have the present value thereof ascertained, under the direction of such court, and allowed them accordingly, as debts in presenti . . ."

[8] ". . . In all cases of contingent debts and contingent liabilities contracted by the bankrupt, and not herein otherwise provided for, the creditor may make claim therefor, and have his claim allowed, with the right to share in the dividends, if the contingency shall happen before the order for the final dividend; or he may at any time apply to the court to have the present value of the debt or liability ascertained and liquidated, which shall then be done in such manner as the court shall order, and he shall be allowed to prove for the amount so ascertained.

"Where the bankrupt is liable to pay rent or other debt falling due at fixed and stated periods, the creditor may prove for a proportionate part thereof up to the time of the bankruptcy, as if the same grew due from day to day, and not at such fixed and stated periods."

held that claims for future rent or for damages for breach of covenant to pay rent were not provable under the act, though differing as to the reason; some holding them not contingent claims within the statutory definition, and others thinking the express permission of proof for rent past due at the date of bankruptcy impliedly excluded claims for rents thereafter falling due. *Ex parte Houghton,* Fed. Cas. 6725; *Ex parte Lake,* Fed. Cas. 7991; *In re Croney,* Fed. Cas. 3411; *In re Commercial Bulletin Co.,* Fed. Cas. 3060; *In re May,* Fed. Cas. 9325; *In re Hufnagel,* Fed. Cas. 6837; *Bailey* v. *Loeb,* Fed. Cas. 739.

In the year 1880 Circuit Judge John Lowell, of Massachusetts, at the suggestion of several mercantile associations, drafted a proposed bankruptcy law, which, after revision, was introduced in Congress, but failed of passage. It contained a section (60) which allowed proof of damages suffered by a landlord by reason of the trustee's rejection of a lease, and another (61) permitting any creditor to compel the trustee to elect to accept or decline any lease, and upon declination the landlord was to have " any damages he shall suffer thereby assessed, as the court shall direct, and prove the amount as a debt in the bankruptcy." [9]

After much agitation by trade associations and commercial bodies, and after prolonged consideration (see *Schall* v. *Camors,* 251 U.S. 239, 250), Congress adopted the Act now in force, that of July 1, 1898.[10] The committee reports do not disclose the origin of the phraseology of. § 63, nor discuss the classes of claims intended to be included. But it is clear that Congress was familiar with analogous sections of the earlier Acts and the court decisions interpreting them, and with the text of the

[9] The bill in full appears in the Congressional Record, Vol. 14, pp. 43–48.

[10] 30 Stat. 544, c. 541.

Lowell Bill and the English act then in force. In view of the extended consideration and discussion which preceded the passage of the Act, the failure to include a provision for claims for loss of rent or for damages consequent on the abrogation of leases, is significant of an intent not to depart from the precedents disallowing them. *Schall* v. *Camors, supra,* pp. 250, 251.

Soon after the passage of the Act several federal courts were called upon to decide the question, and they uniformly held such claims were not provable debts under § 63. *In re Ells,* 98 Fed. 967; *In re Mahler,* 105 Fed. 428; *Atkins* v. *Wilcox,* 105 Fed. 595. Since 1900 the Circuit Courts of Appeals in six circuits, and the District Courts in another, have agreed with these early adjudications. *Slocum* v. *Soliday,* 183 Fed. 410; *McDonnell* v. *Woods,* 298 Fed. 434 (C.C.A. 1); *In re Roth & Appel, supra; In re Mullings Clothing Co.,* 238 Fed. 58; *In re Metropolitan Chain Stores,* 66 F. (2d) 482 (C.C.A. 2); *Trust Co. of Georgia* v. *Whitehall Holding Co.,* 53 F. (2d) 635; *Orr* v. *Neilly,* 67 F. (2d) 423 (C.C.A. 5); *Wells* v. *Twenty-first Street Realty Co.,* 12 F. (2d) 237 (C.C.A. 6); *Britton* v. *Western Iowa Co.,* 9 F. (2d) 488 (C.C.A. 8); *Colman Co.* v. *Withoft,* 195 Fed. 250 (C.C.A. 9); *Bray* v. *Cobb,* 100 Fed. 270; *In re Hook,* 25 F. (2d) 498. The decisions in the Third Circuit turn upon a special form of lease drawn to take advantage of a local statutory provision, and while establishing a rule differing from that elsewhere recognized, are not inconsistent with it. See *Wilson* v. *Pennsylvania Trust Co.,* 114 Fed. 742; *South Side Trust Co.* v. *Watson,* 200 Fed. 50; *In re H. M. Lasker Co.,* 251 Fed. 53; *Rosenblum* v. *Uber,* 256 Fed. 584. The Court of Appeals of the Seventh Circuit has not discussed the question at length, but at least one of its decisions supports the view that a claim for loss of future rentals may be proved. *In re Chakos,* 24 F. (2d)

482; compare *In re Desnoyers Shoe Co.*, 227. Fed. 401; *In re National Credit Clothing Co.*, 66 F. (2d) 371.

. . This court has never had occasion to pass upon the precise point. It has not, however, expressed disapproval of the rulings of the great majority of the lower federal courts, and has cited many of their decisions with apparent approbation. See *Central Trust Co.* v. *Chicago Auditorium Association*, 240 U.S. 581, 589–590; *Wm. Filene's Sons Co.* v. *Weed*, 245 U.S. 597; *Gardiner* v. *Butler & Co.*, 245 U.S. 603, 605; *Maynard* v. *Elliott*, 283 U.S. 273, 278.

In accord with the well-nigh unanimous view of the federal courts reiterated for over thirty years are statements of leading text writers. Collier, Bankruptcy, Vol. 2, p. 1422; Remington, Bankruptcy, Vol. 2, §§ 789, 793; Loveland, Bankruptcy, Vol. 1, § 313.

What of the activities of the Congress while this body of decisions interpreting. § 63a was growing? From 1898 to 1932 the Bankruptcy Act was amended seven times [11] without alteration of the section. This is persuasive that the construction adopted by the courts has been acceptable to the legislative arm of the government. *Baltimore & O. R. Co.* v. *Baugh*, 149 U.S. 368, 372.

In this situation " only compelling language in the statute itself would warrant the rejection of a construction so long and so generally accepted." *Maynard* v. *Elliott,* *supra*, 277. If the rule is to be changed Congress should so declare.

The petitioners call attention to the last clause of § 74 (a), which is one of the sections added to the Act in 1933: [12] "A claim for future rent shall constitute a

---

[11] Acts of February 5, 1903, c. 487, 32. Stat. 797; June 15, 1906, c. 3333, 34 Stat. 267; June 25, 1910, c. 412, 36 Stat. 838; March 2, 1917, c. 153, 39 Stat. 999; January 7, 1922, c. 22, 42 Stat. 354; May 27, 1926, c. 406, 44 Stat. 662; February 11, 1932, c. 38, 47 Stat. 47.

[12] Act of March 3, 1933, 47 Stat. 1467.

provable debt and shall be liquidated under section 63 (b) of this Act." Sections 73 to 76 inclusive were enacted to permit extensions and compositions not theretofore possible. They apply only to individuals. It is highly unlikely that if the quoted sentence had been intended as an amendment of § 63 (a) it would have been placed in context dealing only with the novel procedure authorized by the new sections. Moreover, the discussion on the floor of the Senate relative to the insertion of the sentence, indicates that it was not intended to alter § 63 (a) as it then stood.[13] The petitioners insist the clause is declaratory of the law, as understood by the Congress; but there is no evidence to support this view, and it is inconsistent with the long standing contrary judicial construction.

It remains to consider the effect of the indemnity covenants in the leases. These do not provide for liquidation of damages (compare *Wm. Filene's Sons Co.* v. *Weed, supra*), nor indeed for any right to damages for breach of the covenant to pay rent.

In No. 505 the agreement is, in the event of reëntry and reletting by the landlord, to pay each month the deficit accruing from the difference between the amount to be paid as rent under the lease and the amount received by the landlord from the premises throughout the residue of the original term; and further, that the overplus, if any, at the expiration of the term, shall be paid to the tenant, unless the landlord, within six months from reëntry, release the tenant from all liability under the covenant, which the landlord is authorized to do, thus terminating all rights and liabilities under the agreement of lease.

In No. 506 the stipulation is that upon bankruptcy the landlord may reënter and thereby terminate the lease, and

---

[13] Cong. Rec., Senate, Feb. 24, 1933, pp. 5058-9; Feb. 27, 1933, p. 5278.

the lessee covenants that, in such case, " it will indemnify the Lessor against all loss of rent which the Lessor may incur by reason of such termination, during the residue of the term . . ."

In both cases the lessor has the choice whether he will terminate the lease. Neither the bankrupt nor the trustee has any such option, except as the trustee may be entitled by law to disclaim. And upon the exercise of the option by the landlord, a new contract, distinct from that involved in the original letting, becomes operative. While there is some color for the claim that bankruptcy is an anticipatory breach of the lease contract, entailing a damage claim against the estate, this cannot be true as respects these independent covenants of indemnity. For here, the landlord does not rely upon the destruction of his contract by the bankruptcy; he initiates a new contract of indemnity by the affirmative step of reëntry. And this new contract comes into being not by virtue of the bankruptcy proceeding, but by force of the act of reentry, which must occur at a date subsequent to the filing of the petition. Obviously this contract of indemnity is not breached by bankruptcy, and cannot be breached until the duty of indemnifying the landlord arises. That obligation cannot be complete until the expiration of the original term. There can be no debt provable in bankruptcy arising out of a contract which becomes effective only at the claimant's option and after the inception of the proceedings, the fulfilment of which is contingent on what may happen from month to month or up to the end of the original term. Compare *In re Ells, supra; Slocum* v. *Soliday, supra; In re Roth & Appel, supra.* Such a covenant is not, as petitioners contend, the equivalent of an agreement that bankruptcy shall be a breach of the lease and the consequent damages to the lessor be measured by the difference between the present value of the remainder

of the term and the total rent to fall due in the future. The covenants appearing in the leases in question cannot be made the basis of a proof of debt against the estate.

The judgments are

*Affirmed.*

