### In re F. & W. GRAND 5–10–25 CENT STORES, Inc.

### TIPTON et al. v. IRVING TRUST CO.
#### No. 83.

Circuit Court of Appeals, Second Circuit.
Dec. 3, 1934.

Edward W. Simms, of New York City (Charles Seligson, of New York City, of counsel), for petitioners-appellants.

Cravath, deGersdorff, Swaine & Wood, of New York City (William D. Whitney, Carl W. Painter and Frank H. Detweiler, both of New York City, of counsel), for respondent-appellee.

Before MANTON, AUGUSTUS N. HAND, and CHASE, Circuit Judges.

## AUGUSTUS N. HAND, Circuit Judge.

The petitioners herein are landlords who seek to prove a claim in bankruptcy arising out of the alleged breach of a covenant in a lease made by them to F. & W. Grand 5-10-25 Cent Stores since adjudicated a bankrupt. This lease was of certain land and buildings in Los Angeles, Cal., and was for the term of fifty years commencing May 1, 1931, and continuing to April 30, 1981. The tenant was to pay a specified rent monthly and also taxes accruing during the term. In subdivision IV the lease contained a covenant that "upon delivery of possession" to the lessee it would "within one (1) year from the date it receives possession * * * commence to remodel, alter and/or add to the present building * * * and * * * expend in such work not less than the sum of Sixty Thousand Dollars; * * * or, at Lessee's sole option, * * * within said period of time * * * build and construct a new building * * * to cost not less than the sum of Sixty Thousand Dollars" and would "complete said remodelling, altering and reconditioning of said premises, or, if it elects to erect a new building, * * * complete said new building not later than two (2) years from the date it receives possession. * * * "

On May 1, 1931, the lessee entered into actual possession of the demised premises except for a portion thereof occupied by Van de Kamp Bakery, which was in possession of a building thereon under a lease from the owners subject to which the lease to F. & W. Grand 5-10-25 Cent Stores was made. The latter did not begin to remodel the existing building or to erect a new building on the demised premises during the year succeeding the inception of its lease on May 1, 1931, and on July 14, 1932, a petition in bankruptcy was filed against it under which it was thereafter adjudicated a bankrupt and Irving Trust Company became its trustee.

The lease to Van de Kamp Bakery expired June 30, 1931, but the latter had a privilege of renewal for five years, which it exercised, so that its lease as renewed would expire June 30, 1936. All the rights of the landowners in the Van de Kamp Bakery lease were assigned to F. & W. Grand 5-10-25 Cent Stores, and the latter agreed to "accept possession * * * subject to the tenancy * * * of the Van de Kamp Bakery" and "to the extension of the term thereof should the same be extended for said five (5) year period. * * * " Subdivision XXIII–A of the main lease provided that the Van de Kamp Bakery lease contained a covenant that if the lessor therein wished to erect a new building on the demised premises it might cancel the lease at any time after July 1, 1931, upon giving a ninety-day written notice, and, if this were done and Van de Kamp Bakery failed to give up possession, the time of their further occupancy should be added to the time within which the F. & W. Grand 5-10-25 Cent Stores should be obliged to commence the construction of a new building on the premises demised to them.

It is contended by the trustee in bankruptcy that the breach of the covenant to remodel or rebuild had not accrued prior to the filing of the petition in bankruptcy and therefore there was no breach for which the appellants could file proof of claim. The trustee says this is so because, if F. & W. Grand 5-10-25 Cent Stores wished to erect a new building on the premises they had to dispossess Van de Kamp Bakery and, by the terms of the latter's lease, this could not be done prior to ninety days after July 1, 1931,

or October 1, 1931, and therefore one year from "delivery of possession" within which the tenant had to begin work would not expire until October 1, 1932. But we do not regard this contention as sound. There is nothing in the lease which indicates that the "delivery of possession" (referred to in Subdivision IV) from which time to commence remodeling or rebuilding is to run means delivery of physical possession of every part of the demised premises. The lease was made subject to the existing tenancy of Van de Kamp Bakery, all rights under which were assigned to F. & W. Grand 5-10-25 Cent Stores. The possession which set the time running was clearly a possession subject to the outstanding lease. The only thing which might extend the time was the holding over of Van de Kamp Bakery after a bona fide attempt had been made to remove them by giving the ninety days' notice, and no such notice was given. Had it been given promptly, the tenant would have had seven months left before May 1, 1932, within which to commence the work of rebuilding, and, if the bakery did not remove, as required, such further time as it remained wrongfully in possession. No steps were taken to exercise an option to rebuild and remove the bakery for the purpose of carrying out such a plan. Likewise nothing was done to exercise the option to remodel, and the lease contained no provision for extending the year within which work was to commence if that option were chosen. Up to the time when the petition in bankruptcy was filed, nothing had been done toward either remodeling or rebuilding. Accordingly a breach of the covenant in subdivision IV took place prior to the time when bankruptcy occurred. The breach, however, was not in failing to complete remodeling or rebuilding and to expend $60,000 thereon, but in neglecting to begin such work within the year succeeding May 1, 1931.

On May 23, 1932, the landlords notified F. & W. Grand 5-10-25 Cent Stores, and its receivers in equity, that it was in default for failing to pay the monthly installments of rent due April 1, 1932, and May 1, 1932, and the taxes due April 20, 1932, and for failing to begin to remodel or rebuild on or before May, 1932, and stated that the landlords intended to re-enter and assume control of the premises and to hold the tenant "liable for all loss resulting from its abandonment of the * * * lease." We are not told whether the landlords actually re-entered or not, but, irrespective of this, we think that a covenant in a lease that a tenant shall improve the demised premises when it is not necessarily to be performed prior to the filing of a petition in bankruptcy cannot serve as the basis for a proof of claim. If the tenant had chosen to rebuild and had begun just before May 1, 1932, little more than the demolition of the existing building could have been accomplished and its removal, and nothing more, would have done the landlords more harm than good. If, on the other hand, the tenant had started to remodel the existing building just before the year expired, though acting within its rights, it would have conferred no appreciable benefit upon the owners of the property who are seeking to prove a claim based upon alleged damages because of failure to do this very thing. The breach of the covenant to improve the demised premises can only serve as the foundation for a proof of claim to the extent that damages flowed from a failure to perform before July 14, 1932, when the petition in bankruptcy was filed. If the landlords had sued on July 14, 1932, for breach of covenant to begin work before May 1, of that year, the damages would have been wholly speculative and illusory. Damages for breach of the covenant to complete work which did not have to be fully performed before May 1, 1932, were not a fixed liability absolutely owing at the time of the filing of the petition and not, in our opinion, provable when arising out of a lease of land. Bankruptcy Act, § 63 (11 USCA § 103); Manhattan Prop. v. Irving Trust Co., 291 U. S. 320, 54 S. Ct. 385, 78 L. Ed. 824.

It is true that the bankruptcy of the tenant is an anticipatory breach, but a claim for a breach of a covenant to improve demised premises except so far as damages accrued prior to bankruptcy is of the nature of claims for future rents, or for restoration of premises, or for payment of all future rents at the termination of the lease which have been held nonprovable. Manhattan Prop. v. Irving Trust Co., 291 U. S. 320, 54 S. Ct. 385, 78 L. Ed. 824; Wright v. Irving Trust Co. (C. C. A.) 70 F.(2d) 245; In re F. & W. Grand 5-10-25 Cent Stores (Possart v. Irving Trust Co.) 69 F.(2d) 807, 808 (C. C. A.); In re Schulte-United, Inc. (D. C.) 2 F. Supp. 285.

We are all the more reconciled to the foregoing conclusion because the building which, under the lease, was to be restored or rebuilt would not have passed to the landlords for fifty years had the lease been ful-

filled, so that its present worth would in any event have been very slight.

The order expunging the claim is affirmed.

MANTON, Circuit Judge (dissenting).

August 17, 1928, the bankrupt leased from the appellants for a term of years, commencing May 1, 1931, at stated rentals, real property in the city of Los Angeles, Cal. Paragraph 4 of the lease provided that the "Lessee agrees that upon delivery of possession to it, as herein provided, it will thereafter and within one (1) year from the date it receives possession of said demised premises, commence to remodel, alter and/or add to the present building located on said demised premises, and agrees to expend in such work not less than the sum of Sixty thousand dollars ($60,000) or, at lessee's sole option, it may within said period of time, in lieu of remodeling and/or altering and/or otherwise reconditioning or changing the present building on said demised premises, build and construct a new building on said premises * . * *, said building in either event to cost not less than * * * $60,000. * * * *"

It covenanted to complete the work within two years from the date it received possession. May 1, 1931, the bankrupt entered into actual possession of the premises other than a part occupied by a bakery company under a previous lease. As of that date, under the terms of the lease, the actual occupancy as acquired by the bankrupt was all it was entitled to; it was bound to accept such offer of possession. The bankrupt never occupied the whole premises, but its physical possession of part of the premises was coupled with a constructive possession of the remaining part, and it received the rents from the tenant occupying the remainder. July 14, 1932, after receiving this possession, a petition in bankruptcy was filed against the bankrupt, and prior thereto it had neither commenced to remodel the existing building nor had it commenced to erect a new building.

The question is presented as to when the time began to run when, within one year thereafter, the bankrupt was obliged to commence the remodeling of the old building or erection of the new building. Within the terms of the lease, possession was given to it May 1, 1931, when it occupied all the premises except that occupied by the bakery company. It had until May 1, 1932, to fulfill its promise to commence the erection of a new building, or the remodeling of the old. The parties did not intend an actual occupancy of the whole of the premises, but only that occupancy which the bankrupt had on May 1, 1931. The lease for the bakery company contained a provision for five years' renewal from June 30, 1931. The bakery company's lease also contained a provision that, in the event that the lessee erected a new building, the lessor could cancel the bakery company's lease upon a ninety-day notice at any time after July 1, 1931. If such option for cancellation was exercised, and there was delay in the bakery company's vacating, by paragraph 23(a) of the bankrupt's lease, the time during which the lessee remained over and remained in possession was to be added to the time within which the bankrupt should be obligated to commence the construction of the new building, provided such holding over and delay was not occasioned or permitted through any fault on the part of the bankrupt. This provision illustrates that the time within which the bankrupt was to commence performance of the contract, under paragraph 4 of the lease, was to start running at the commencement of the bankrupt's term on May 1, 1931. If, as appellee contends, the time within which the bankrupt was to commence performance under paragraph 4 was not to start running until the bakery company vacated and the bankrupt received actual possession of all the demised premises, then the provision of paragraph 23(a) has no purpose or meaning, for under such interpretation it would be unnecessary to add the time which the bakery company might hold over to the time within which the bankrupt was obligated to commence construction. The reason for granting to the bankrupt the benefit of an unlawful holdover by the bakery company was so that the time of performance by the bankrupt was to start running before the bakery company actually vacated the premises. The parties recognized the possibility of a hold-over. No provision was made for an equivalent benefit to the bankrupt in the event that the bakery company's lease had run its normal course and the bakery company should then hold over after June 30, 1936. June, 1936, was beyond the date for performance by the bankrupt, and therefore a hold-over by the bakery company after that time was immaterial with respect to the performance of the building operation.

The parties made a distinction between what they meant by complete physical occu-

pancy and the possession with a part of the property leased. When they intended physical possession of the entire demised premises, it was made plain, as evidenced by paragraph 10, "physical possession of the entire demised premises * * * free and clear of all tenants." The possession to be delivered to the bankrupt under the lease was no more than a physical occupancy of the premises except that part occupied by the bakery company, plus a constructive possession of the bakery company's leased part, and such was delivered on May 1, 1931.

The time for performance by the commencement of remodeling or erection of a new building therefore began to run from May 1, 1931, and ended May 1, 1932, two and a half months prior to the bankruptcy petition. Thus fourteen and a half months after the bankrupt took possession expired, and no steps were taken to fulfill its agreement to remodel or build.

Was this failure of the bankrupt a breach of the entire agreement to expend at least $60,000 for remodeling or rebuilding? Williston on Contracts, § 1288, says:

"As a contract consists of a binding promise or set of promises, a breach of contract is a failure, without legal excuse, to perform any promise which forms the whole or part of a contract."

There are two types of breach of contract—one, partial, and the other, total, and different consequences result from each. Where a breach is partial, the promisee has a right of action upon it, but he has not such a right of action as to hold the promisor liable for a total breach. The entire contract is not turned into a right of action for damages until the breach becomes total. Williston on Contracts, § 1290. Whether the contract has been totally breached or only partially is a matter of degree.

There are tests helpful for this determination. Section 275 of the Restatement of the Law of Contracts, gives "Rules for Determining Materiality of a Failure to Perform," as follows:

"In determining the materiality of a failure fully to perform a promise the following circumstances are influential: (a) the extent to which the injured party will obtain the substantial benefit which he could have reasonably anticipated; (b) the extent to which the injured party may be adequately compensated in damages for lack of complete performance; (c) the extent to which the party failing to perform has already partly performed or made prepara-

tions for performance; (d) the greater or less hardship on the party failing to perform in terminating the contract; (e) the willful, negligent or innocent behavior of the party failing to perform; (f) the greater or less uncertainty that the party failing to perform will perform the remainder of the contract."

And section 276(c) says:

"If delay of one party in rendering a promised performance occurs before any part of his promise has been rendered, less delay discharges the duty of the other party than where there has been part performance of that promise."

Williston (section 844) in discussing a breach in limine, says:

"Where a breach occurs at the very outset (a breach in limine) a stricter rule is applicable."

A breach which might under some circumstances be only partial may become total when it occurs at the very outset, and a breach which might otherwise be considered partial may become total when it is either willful or negligent. Also where the promisor has not performed in any manner and to any extent, there is less reason for considering a breach to be only partial. When the injured party will not receive any of the benefits of the promise, there is less reason for considering the breach to be only partial. Where there will be no greater hardship on the part of the promisor if the contract is considered totally breached than if it is considered partially breached, there is less reason for considering a breach to be only partial.

The bankrupt did not promise to commence on a certain day, but within one year. He allowed 14½ months to expire, and failed to commence. He did not commence at any time within the 2½ months after the expiration of the one year. Thus, there was clearly a breach of his promise to commence. It was a willful breach, and no attempt to explain it has been made. It was at the outset of the contract and was not merely a breach of a promise to commence on a certain day. Had the bankrupt commenced within a reasonable time after the period of time had expired, then it might be said that he had only failed to perform his promise at the time set, and that this was not material, and therefore not a total breach. But, having failed to commence at all and having then made it impossible to commence because of bankruptcy, and, indeed, without having prepared to commence,

or evidenced any intent to commence, it is clear that the circumstances indicate a total breach of the contract.

There are no circumstances which would minimize this breach. The appellant will not receive any of the benefits to which they would have been entitled. There is an absence of any circumstances indicative of only a partial breach. The bankrupt unreasonably, without excuse, over a period specified in the contract and even longer, failed to perform any part of its promise to commence and complete remodeling or erecting as the contract required. Such was a breach of the entire contract.

It was as if an item of rent were due on May 1, 1932, which the parties had fixed at $60,000 (minimum cost of improvements on the premises). The appellant was entitled to this improvement of his premises, and has suffered damages accordingly which should be estimated at the cost of the improvements less a reasonable depreciation.

The claim should be allowed and the order reversed.