## In re OWL DRUG CO.

## MANSUR v. EDLER.
### No. 8071.

Circuit Court of Appeals, Ninth Circuit.
June 8, 1936.

John L. McNab and Robert Littler, both of San Francisco, Cal., and Hawkins, Mayotte & Hawkins and Robert Z. Hawkins, all of Reno, Nev., for appellant.

Thatcher & Woodburn, Geo B. Thatcher, Wm. Woodburn and Wm. J. Forman, all of Reno, Nev., and Clarence A. Shuey, and Grant H. Wren, both of San Francisco, Cal., for appellee.

Before WILBUR, GARRECHT, and MATHEWS, Circuit Judges.

GARRECHT, Circuit Judge.

This is an appeal from an order of the District Court affirming an order of the referee in bankruptcy disallowing a claim made to the trustee by appellant here. Appellant takes her interest by assignment from her husband, R. S. Mansur.

In 1919, one R. S. Mansur and two others were the owners of all of the capital stock of the Mansur Drug Company of St. Paul, Minn. On July 21 of that year an agreement was entered into between said owners and the Owl Drug Company, whereby the former were to transfer to the latter all of the capital stock of the Mansur Drug Company and to deliver to the Owl Drug Company the written consent of the lessors of the premises, upon which the Mansur Drug Company was located, to the assignment by the Mansur Drug Company of its lease to the Owl Drug Company.

The consideration for this agreement was the payment of $100,000 in cash, variously divided among the three stockholders of the Mansur Drug Company, and the payment of $4,500 annually in monthly installments for the balance of the term of the lease assigned, namely, from the 1st day of August, 1919, to the 30th day of June, 1936.

The agreement above outlined contained the following provision:

"It is understood and agreed that in the event the Mansur Drug Company or the party of the second part as assignee, or their or either of their, successors or assigns, should be deprived of the demised premises through no fault of their own, or because or on account of the provisions of said lease of June 1, 1915, as modified August 14, 1916, under clause 26 as herein quoted, then and thereupon the annual payment of Forty-

five Hundred Dollars ($4,500) in monthly installments shall at once cease and forever terminate, and said second party shall be relieved from any further liability on account thereof."

Clause 26 of the original lease of June 1, 1915, referred to in the above quotation, provided that, if the property was destroyed so that it could not be repaired within ninety days, then either party might terminate the lease.

The agreement of July 21, 1919, also contains this statement:

"Reference is hereby made to said agreement of the 1st of June 1915, and the 14th of August, 1916, as fully and to the same extent as if herein set forth at length."

By the agreement of June 1, 1915, between the Mansur Drug Company, lessee, and St. Paul Arcade Company, the Schneider Realty Company, and Otto Bremer, lessors, the lessee leased the premises described from July 1, 1916, until June 30, 1931, inclusive, with the option to extend the term granted for a term of five years, that is to say, from July 1, 1931, to June 30, 1936, inclusive, at an increased rental. The option was to be exercised by notifying lessor Bremer in writing on or before January 2, 1931. This lease was assigned, as set out above, by the Mansur Drug Company to the Owl Drug Company, and the agreement between said parties contemplated the extension of the lease. On May 27, 1930, the Owl Drug Company assigned the original lease to the Louis K. Liggett Drug Company and the latter went into possession of the premises on that date. On April 15, 1931, the Louis K. Liggett Company, then in possession of the premises under said lease, entered into an agreement with St. Paul Arcade Company, one of the three original lessors. This agreement is in part as follows:

"This Agreement, made as of the 15th day of April, 1931, by and between St. Paul Arcade Company, * * * and Louis K. Liggett Company * * *

"Witnesseth:

"Whereas, under date of June 1, 1915, a lease was entered into by St. Paul Arcade Company, Schneider Realty Company and Otto Bremer, as Lessors, and Mansur Drug Company, as Lessee, referring to certain property in St. Paul, Minnesota, as more fully described in said lease, for a term expiring June 30, 1931; and

"Whereas, Otto Bremer heretofore assigned to St. Paul Arcade Company his leasehold interest in said property; and

"Whereas, said lease was modified by agreement, dated August 14, 1916, so that other premises were substituted and lease[d] to Lessee in lieu of the premises originally demised to it in said lease; and

"Whereas, said lease was further modified by agreement dated January 18, 1929, with reference to paragraph 38 of said lease,

"Whereas, the leasehold interest of Schneider Realty Company in said property expired as of January 1, 1920; and

"Whereas, Mansur Drug Company, by instrument, dated July 21, 1919, assigned its interest as Lessee, under said lease, dated June 1, 1915, as thereafter modified by the agreement, dated August 14, 1916, to The Owl Drug Company, a Nevada corporation; and

"Whereas, The Owl Drug Company, by instrument, dated May 29, 1930, assigned its interest as Lessee to Louis K. Liggett Company, a Massachusetts Corporation; and

"Whereas, Lessor and Lessee herein are desirous of further modifying said lease and extending the term thereof, as hereinafter more fully provided.

"Now Therefore, in consideration of the premises and the mutual promises herein contained, the parties hereto agree as follows:

"I. The lease, dated June 1, 1915, as modified by the agreements dated August 14, 1916, and January 18, 1929, between St. Paul Arcade Company, Schneider Realty Company and Otto Bremer, as Lessors (to whose interest as Lessors, St. Paul Arcade Company has heretofore succeeded), and Mansur Drug Company (to whose interest as Lessee. Louis K. Liggett Company has heretofore succeeded) referring to * * * the premises now occupied and under lease to Lessee * * * is hereby further modified so that the term thereto is extended to June 30, 1936, at an annual rental of Twelve Thousand Five Hundred Dollars ($12,500.00) for such extended term * * *.

"II. Said lease, as modified by agreements, dated August 14, 1916, and January 18, 1929, is further modified and amended by inserting the following:

"Lessee reserves all its right, title and interest in and to its trade fixtures in said premises, and Lessor hereby waives all its

right, title and interest in and to said trade fixtures at the expiration of said lease, as herein extended. * * *

"III. The paragraphs in said lease, dated June 1, 1915, and the agreement, dated August 14, 1916, referring to the option on the part of Lessee to extend said lease for five years from July 1, 1931, is hereby eliminated from said lease and agreement.

"IV. The parties hereto ratify and confirm in all respects the lease, dated June 1, 1915, and as modified by the agreements dated August 14, 1916, and January 18, 1929, and as further modified by this agreement, dated April 15, 1931, and said lease shall remain in full force and effect throughout the extended term, unless sooner terminated as therein provided."

The concluding paragraphs are not important to the decision of this case.

The Owl Drug Company was adjudicated a bankrupt on its voluntary petition in the District Court of the United States for the District of Nevada on October 10, 1932. Appellee herein was thereafter appointed the trustee of said bankrupt estate. Appellant filed her claim for $8,250 with the trustee for installments that were to be paid on the contract after October 10, 1932. One payment subsequent to adjudication was made by Louis K. Liggett Company, reducing the claimed amount to $7,500.

The claim was denied by the trustee May 19, 1934, on the following grounds:

"1st. Denies that the above estate is indebted to said claimant as alleged in said claim or in any other manner or at all.

"2nd. That said claim is not provable in bankruptcy for the reason that the same is, in effect, for future rent of real property.

"3rd. That said claim is not provable in bankruptcy for any sum whatsoever for the reason that the same is and was at the date of the filing of the petition in bankruptcy herein, and at the date of the adjudication herein, wholly contingent both as to existence and as to amount."

The objection came on for hearing before the referee, where "Both sides * * * admitted and stipulated that if the lease were a new lease there would be no question as to the provability of the claim, but if the lease were merely a modification of the original leases the situation would be entirely different." The referee held that the lease of April 15, 1931, was not a new lease, but an extension of the original lease, and that the claim fell into the category of contingent claims for future rent. Accordingly, the objection of the trustee was sustained and the claim denied.

Thereafter a petition for review of the referee's order was brought before the District Court and the order affirmed upon the ground that the claim was based upon the old lease, uncertain both as to the obligation and amount at the time of bankruptcy and therefore not provable. From the order of the District Court confirming the order of the referee, this appeal is taken.

The only question is whether this claim is provable in bankruptcy.

■ The first point to be decided is whether or not appellant's claim is one for future rent. If the claim is one as for future rent or is contingent and uncertain, it is not allowable.

If we look to the contract which is the basis of the claim here involved, it is clear that the existence and amount of the bankrupt's liability for the future payments as provided by such contract depends upon contingencies that are present in every claim for future rent of real property. From it also appears the uncertainties and contingencies which make it impossible to determine the existence of a present liability. The original agreement of lease provides that, in the event the Mansur Drug Company or its successors or assigns should be deprived of the use of the premises through no fault of their own, then the installments should terminate. If the lessee or assigns were ousted of possession legally or, as specifically provided in the contract, the premises were injured or destroyed by fire or the elements or through any other cause so as to render the leased premises unfit for occupancy so that they might not be repaired within ninety days, there was no obligation to make further payments. Likewise the obligation would cease if the premises were destroyed or taken by action of the public authorities or for public use. Thus we see that the reasons which require disallowance of a claim for future rent are equally applicable to the claim of the appellant here.

The Circuit Court of Appeals for the Second Circuit said, in Re Roth & Appel, 181 F. 667, 669, 31 L.R.A.(N.S.) 270:

"Rent is a sum stipulated to be paid for the use and enjoyment of land. The occupation of the land is the consideration for the rent. If the right to occupy terminate, the obligation to pay ceases. Consequently, a covenant to pay rent creates no debt un-

til the time stipulated for the payment arrives. The lessee may be evicted by title paramount or by acts of the lessor. The destruction or disrepair of the premises may, according to certain statutory provisions, justify the lessee in abandoning them. * * * The lessee may assign his term with the approval of the lessor, so as to relieve himself from further obligation upon the lease. In all these cases the lessee is discharged from his covenant to pay rent. The time for payment never arrives. The rent never becomes due. It is not a case of debitum in praesenti solvendum in futuro. On the contrary, the obligation upon the rent covenant is altogether contingent. * * *

"It follows from these principles that rent accruing after the filing of a petition in bankruptcy against the lessee is not provable against his bankrupt estate as 'a fixed liability * * * absolutely owing at the time of the filing of the petition,' within the meaning of section 63a (1) of the bankruptcy act of 1898 [11 U.S.C.A. § 103 (a) (1)]. It is not a fixed liability, but is contingent in its nature. It is not absolutely owing at the time of the bankruptcy, but is a mere possible future demand. Both its existence and amount are contingent upon uncertain events."

Mr. Justice Roberts, speaking for the Supreme Court in Manhattan Properties, Inc., v. Irving Trust Co., etc., 291 U.S. 320, 54 S.Ct. 385, 78 L.Ed. 824, after an exhaustive review of the authorities, reaches the same conclusion as the case of In re Roth & Appel, supra. See, also, Miller v. Irving Trust Co., etc., 296 U.S. 256, 56 L.Ed. 189, 80 L.Ed. 211; Colman Co. v. Withoft, 195 F. 250 (C.C.A. 9).

Therefore, if the claim is for unaccrued rent, it is not provable in bankruptcy.

Further, at the date of the adjudication, the liability of the bankrupt for any future payments was uncertain. This uncertainty could not be removed by calculation. Whether the actual duty to pay the amount stipulated would arrive was a matter of speculation. Also no means exist by which it can be definitely ascertained whether or not the particular premises would be destroyed during a series of years covered by the agreement. Nor can it be determined whether the other uncertainties covered by the agreement might arise. Therefore the claim filed by appellant was contingent within the test as determined by the law. In Maynard

v. Elliott, 283 U.S. 273, 278, 51 S.Ct. 390, 392, 75 L.Ed. 1028, it is said:

"The contingency of the bankrupt's obligation may be such as to render any claim upon it incapable of proof. It may be one beyond the control of the creditor, and dependent upon an event so fortuitous as to make it uncertain whether liability will ever attach. In re Merrill & Baker (C.C.A.) 186 F. 312. Such a claim could not be proved under the Act of 1841 although in terms permitting proof of contingent claims. Riggin v. Magwire, 15 Wall. 549, 21 L.Ed. 232. Or, the contingency may be such as to make any valuation of the claim impossible, even though liability has attached. Of this latter class was the claim upon the bankrupt's contract to pay his divorced wife a specified amount annually so long as she should remain unmarried, proof of which was for that reason rejected in Dunbar v. Dunbar [190 U.S. 340, 23 S.Ct. 757, 47 L.Ed. 1084], supra; see Atkins v. Wilcox (C.C.A.) 105 F. 595, 53 L.R.A. 118."

The next point presented is whether the bankrupt had deprived itself, before the time of filing the petition in bankruptcy, of the premises through its own act, so as to render the remaining payments under its contract with the Mansur Drug Company payable in any event and not dependent upon use of the demised premises. This question is answered by deciding whether or not the agreement of April 15, 1931, is a modification of the original lease by the assignees or a new lease.

The appellant argues that the agreement of April 15, 1931, between the St. Paul Arcade Company and Louis K. Liggett Company was an entirely new lease intended as a substitute for the original lease, and that thereby a surrender of the original lease had been made. Appellee, on the other hand, contends that the instrument was nothing more than a modification of certain terms of the original lease, and that the original lease was still in force and effect.

It was conceded before the District Court by counsel for appellant that, unless the assignee of the bankrupt had been deprived of the use of the premises through its own fault by the making of a new lease, the decision of the referee was correct.

In determining the effect of the instrument, we must look to the intention of the parties as expressed therein. An inspection of the agreement of April 15, 1931, leads to the conclusion that the parties thereto,

assignees of the parties to the original lease, did not intend thereby to execute a new lease, but to modify the original lease. The force of the words, "desirous of further modifying said lease and extending the term thereof," "is hereby further modified," "is further modified," and "The parties hereto ratify and confirm in all respects the lease, dated June 1, 1915, and as modified by the agreements dated August 14, 1916, and January 18, 1929, and as further modified by this agreement, dated April 15, 1931, and said lease shall remain in full force and effect throughout the extended term, unless sooner terminated as therein provided," is inescapable. Parties making use of these expressions cannot be intending to make a new lease.

That the option to extend was not exercised within the time specified does not change the result, for this limitation of time was for the benefit of the lessor, who could waive it as was done here. Nor is there merit in the contention that the rental was changed—changing conditions in the economic world may have compelled it.

The appellant also contends that the objections of the trustee were not specific enough, that he used the word "contingent" where he meant "uncertain," and that consequently the objections were of no efficacy and must be disregarded. We are not impressed with this argument. The two words seem to be used interchangeably when considering this class of claims. In any event, we are of opinion that the mere injudicious choice of a word in a denial of a claim by the trustee cannot change a debt not provable into one that is provable. Furthermore, we are of opinion that the claim may be disallowed by the referee whether the trustee objects or not.

It was said in Re L. W. Birmingham & Son Co. (D.C.) 1 F.(2d) 511, 512:

"In Remington on Bankruptcy, vol. 2, p. 384, it is said with reference to an improper claim that the referee should not allow it, even though no party in interest objects. There is cited in support of this statement In re Goble Boat Co. (D.C.) 190 F. 92, 27 A.B.R. 48, and while the point determined in that case was not the exact question here presented, in speaking of the duties of a referee the court said:

" 'A referee is not justified in allowing a claim against an estate in bankruptcy when the proofs filed do not comply with the statute or general orders promulgated by the Supreme Court, whether creditors or the trustee raise specific objections to the sufficiency of the proofs filed or not. It is the duty of the referee to examine the proofs filed and see that they are sufficient.' "

There is nothing to the contrary to be found in Re Weidenfeld, 277 F. 59, 61 (C. C.A. 2).

In passing, we take occasion to note that the decision in this case involves section 63a of the Bankruptcy Act (11 U.S.C.A. § 103 (a), before its amendment on June 7, 1934, and therefore the law under the amendment to that section is not material here.

Order affirmed.